UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MICKELSON,<br><br>                                    Plaintiff,<br><br>    v.<br><br>CITY OF ENCINITAS,<br><br>                                  Defendant. | Case No. 22-cv-0487-BAS-BLM<br><br>**ORDER GRANTING JOINT MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT**<br>**(ECF No. 25)** |

      Plaintiff James Mickelson brings this action against Defendant City of Encinitas for violations of the Fair Labor Standards Act ("FLSA"). (Compl., ECF No. 1) On January 20, 2023, the parties filed a Joint Motion for approval of an FLSA Settlement Agreement ("Settlement" or "Settlement Agreement"). (Mot., ECF No. 25.) The Court finds this motion suitable for determination on the papers submitted without oral argument. *See* Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1). For the following reasons, the Court **GRANTS** the Joint Motion for approval of FLSA Settlement.

## I. BACKGROUND

Plaintiffs are current or former employees alleging Defendant failed to pay overtime wages.[1] Specifically, Plaintiffs are or were Battalion Chiefs of the Encinitas Fire Department, an employment position which Defendant classifies as FLSA-exempt. (Mot. 3–4.). Plaintiff asserts that Encinitas Battalion Chiefs were improperly classified as exempt employees, and therefore, unlawfully denied overtime pay. (Compl. ¶ 14.) Plaintiff seeks unpaid wages, liquidated damages, and attorneys' fees and costs for FLSA violations. (*Id.*)

On June 8, 2022 and September 21, 2022, the parties participated in two Early Neutral Evaluation Conferences with the Honorable Magistrate Judge Barbara Major. (ECF No. 10; ECF No. 12.) Although the parties did not agree to a settlement at the conferences, they continued to communicate regarding settlement thereafter. Ultimately, on January 18, 2023, the parties executed a Settlement Agreement which would resolve all claims and causes of action in this lawsuit. (Ex. 1 to Wilson Decl.)

Under the terms of the Settlement, Defendant agrees to pay a total of $145,000.00 to Plaintiffs. (Ex. 1 to Wilson Decl., ECF No. 25.) The Settlement is allocated as follows: (1) $26,108.22 paid to James Mickelson; (2) $12,373.71 paid to Terence Chiros; (3) $47,677.74 paid to Jorge Sanchez; and (4) $58,850.33 paid to Michael Spaulding. (Mot. 4.) Initially, in return, Plaintiffs agreed to release Defendant from "any and all wage-and-hour and overtime pay-related claims under the Fair Labor Standards Act, California law, or tort or contract theories, which accrued or could have accrued through the Effective Date of this Agreement, and that were or could have been asserted in the Action." (Ex. 1 to Wilson Decl. ¶ 6.) But after the Court requested supplemental briefing on the scope of the release, the parties agreed to and filed a narrower liability release. (ECF No. 27.) The parties eliminated the release of California and common law claims, and as such, the revised release only applies to wage and hour claims under the FLSA. (*Id.*)

---

[1] The Court adopts the nomenclature of the Settlement Agreement but notes that no plaintiffs other than James Mickelson have formally joined the action.

## II. LEGAL STANDARD

"The FLSA was enacted to protect covered workers from substandard wages and oppressive working hours." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1171 (S.D. Cal. 2016). Specifically, "[t]he FLSA establishes federal minimum wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). "[C]laims for unpaid wages under the FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court." *Selk*, 159 F. Supp. 3d at 1172.

"The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved." *Beidleman v. City of Modesto*, No. 1:16-cv-1100-DAD-SKO, 2017 WL 5257087, at *2 (E.D. Cal. Oct. 26, 2017). However, district courts in the Ninth Circuit generally apply the standard adopted by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *Id.*; *see also Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA (DHB), 2017 WL 6541105, *2 (S.D. Cal. Dec. 21, 2017). Thus, in reviewing a FLSA settlement, courts must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" *Selk*, 159 F. Supp. 3d at 1172 (quoting *Ambrosino v. Home Depot U.S.A., Inc.*, No. 11-cv-1319 L(MDD), 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014)). A court will not approve a settlement where there is no question that the FLSA entitles the plaintiffs to the relief sought, because it would shield employers from the full cost of complying with the statute. *See id.*

Once a court determines that a bona fide dispute exists, "it must then determine whether the settlement is fair and reasonable." *Id.* Courts should consider the following factors in evaluating whether a settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and the amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release

provision in the settlement agreement; (5) the experience and views of counsel; and (6) the possibility of fraud or collusion. *Id.* at 1173. A "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*

Finally, the Court must evaluate whether the award of attorney's fees and costs is reasonable. *See Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (noting that in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").

### III. ANALYSIS

#### A. Bona Fide Dispute

As a threshold matter, the Court finds that a bona fide dispute exists between the parties over potential liability under the FLSA. Indeed, the Joint Motion outlines several.

First, the parties disagree as to whether Encinitas Battalion Chiefs are FLSA-exempt employees. Plaintiff relies on regulations that clarify the scope of FLSA exemptions: "The [FLSA minimum wage provision] exemptions . . . do not apply to . . . fire fighters . . . who perform work such as preventing, controlling or extinguishing fires of any type." 29 C.F.R. § 541.3. Plaintiff maintains that Battalion Chiefs "actively engage in fire-fighter responsibilities" and "regularly respond to calls for rescuing fire and accident victims; medical calls for services, and regularly carry and use fire suppression and medical equipment." (Mot. 11.)

Defendants, by contrast, take the position that managerial fire employees like Battalion Chiefs are properly exempt, so long as they meet the requirements of the executive or administrative exemption. (Mot. 8–9.) To qualify for the administrative exemption, the employee must meet a minimum salary and the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer. . . ." 28 C.F.R. § 541.200(a). The parties point to recent Fourth Circuit caselaw and a 2005 Department of Labor Opinion Letter that

both determined fire department battalion chiefs were properly classified as exempt. (Mot. 9.) Defendant asserts that Encinitas Battalion Chiefs are "always responsible for supervising both Captains and the other firefighters" and that preliminary discovery confirmed they "rarely if ever engage in actual firefighting." (*Id.* at 10.) Based on the foregoing, the Court finds that whether Battalion Chiefs were properly exempt is a legitimate question about "the existence . . . of Defendant's FLSA liability." *Ambrosino*, 2014 WL 1671489, at *1.

Second, the parties assert there is a bona fide dispute over the length of the statute of limitations. (Mot. 11–12.) "Successful FLSA plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action." *Haro v. City of L.A.*, 745 F.3d 1249, 1258 (9th Cir. 2014) (citing 29 U.S.C. § 255(a)). "When a violation is 'willful,' however, the statute of limitations extends to three years." *Id.* "To show willfulness, a plaintiff must demonstrate that the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Thus, the amount of damages in this case will depend on whether Plaintiff can show knowledge or reckless disregard of FLSA violations. At this stage in the litigation, Plaintiff has not established any facts regarding intentional misclassification. (Mot. 12.) Thus, the statute of limitations poses a legitimate question about the "extent of Defendant's FLSA liability." *See Ambrosino*, 2014 WL 1671489, at *1.

Finally, the parties contend that Defendant could avoid liquidated damages under a discretionary defense. The statute provides:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. Given that the law is not settled with respect to whether battalion chiefs are properly exempt, Defendant may be able to demonstrate good faith and the Court could opt to award no liquidated damages. This too draws into question the amount that Plaintiffs might receive were the case to proceed to trial.

### B. Reasonable Settlement

Satisfied that a bona fide dispute exists, the Court next considers the relevant factors in determining whether the Settlement Agreement is fair and reasonable under the FLSA.

#### 1. Plaintiff's Range of Possible Recovery

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174. However, the settlement amount agreed to need not represent a certain percentage of the maximum possible recovery. *See id.*; *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."). Ultimately, the Court must be satisfied that the amount agreed to is fair and reasonable under the circumstances presented. *See Selk*, 159 F. Supp. 3d at 1174.

Here, Plaintiff seeks three years of back pay, liquidated damages, and attorneys' fees. (Mot. 3.) Early in this litigation, Defendant retained an economics and accounting expert, Nicholas Briscoe. Mr. Briscoe submits a declaration with a calculation of the overtime allegedly due to Plaintiffs based on a two-year statute of limitations. (Mot. 13; Briscoe Decl. ¶ 8, ECF No. 25.) Based on Mr. Briscoe's calculations, Plaintiffs would receive $184,515.80 if they prevailed at trial.[2] (Briscoe Decl. ¶¶ 8–9.) Under the Settlement, Defendant will pay a total of $145,000.00 to Plaintiffs ("Settlement Amount").

---

[2] Under a three-year statute of limitations model, Plaintiffs maximum recovery would be $284,997.28. (Briscoe Decl. ¶ 8.) Given the significant uncertainty that Plaintiff could show "willfulness" to support a three-year statute of limitations, the Court finds the parties' decision to calculate based on a two-year statute of limitations reasonable.

The Court finds that the total Settlement Amount has a "reasonable relationship" to Plaintiffs' maximum recovery. *See Selk*, 159 F. Supp. 3d at 1174. As such, this factor favors approval of the Settlement Agreement.

### 2. Stage of Proceedings

The court is also to evaluate the stage of the proceedings and the amount of discovery completed in order to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties did not engage in formal discovery, but they did exchange information and analyze Plaintiffs' time records and wage history. (Swanson Decl. ¶ 13, ECF No. 25.) The parties attended two Early Neutral Evaluation Conferences, during which they had lengthy discussions with a neutral magistrate regarding the strengths and weaknesses of their cases. (Wilson Decl. ¶ 2; Cunningham Decl. ¶ 14, ECF No. 25.) Afterwards Defendant produced Plaintiffs' wage and hour records, which were necessary to evaluate the potential range of recovery. (Wilson Decl. ¶¶ 3–6; Cunningham Decl. ¶¶ 12–17.) Both parties reviewed Mr. Briscoe's calculations and agree that the calculations accurately reflect the potential recovery in this case. (Mot. 13.) Given the information exchanged, the Court finds the parties had "sufficient information" to reach an informed decision. *Linney*, 151 F.3d at 1239. Accordingly, this factor favors approval of the Settlement Agreement.

### 3. Litigation Risks

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). As set forth above, there are numerous bona fide disputes that sow uncertainty in the outcome of the litigation. This factor, therefore, weighs in favor of approving the Settlement.

### 4. Scope of Release

"Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. Indeed, "a gap between the allegations brought in the case and the claims released in a settlement agreement will militate against finding the settlement fair and reasonable." *Id.* Here, the liability release matches Plaintiff's wage and hour claims. (Mot. 5.) Plaintiff alleges violations of the FLSA in his Complaint. (*See generally* Compl.) The initial liability release included state and common law claims, but the revised liability release applies only to FLSA claims. (ECF No. 27.) Thus, the Court is satisfied that the release provision is limited in scope and "does not force class members to forfeit unrelated claims." *See Selk*, 159 F. Supp. 3d at 1179. Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

### 5. Experience of Counsel

"The opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-5188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. Jul. 11, 2014). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Plaintiff's counsel has acted as lead counsel in more than fifty FLSA lawsuits representing tens of thousands of employees. (Aitchison Decl. ¶ 10, ECF No. 25.) In addition, Plaintiff's counsel has published books on the FLSA, conducted FLSA audits, and lectured on the FLSA. (*Id.* ¶¶ 13–18.) Plaintiff's counsel attests to finding the Settlement fair and reasonable. (*Id.* ¶ 31.) The Court is satisfied with his wealth of experience, and his opinion is given due weight. Thus, the Court finds that this factor also weighs in favor of approving the Settlement Agreement.

### 6. Possibility of Fraud or Collusion

Finally, the possibility of fraud or collusion also factors into the fairness of a proposed settlement agreement. *See Selk*, 159 F. Supp. 3d at 1180. The Court finds no evidence that the parties or their counsel colluded or pursed their own self-interests in reaching the Settlement Agreement. As noted above, the Settlement Agreement reflects a reasonable compromise of the disputed issues, damages, and expense of further litigation. Moreover, the Court finds no evidence of "subtle signs" of collusion, such as "when counsel receive a disproportionate distribution of the Settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Accordingly, this factor likewise favors approval of the Settlement Agreement.

### C. Attorneys' Fees

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)). Where a settlement produces a common fund for the benefit of the plaintiffs, courts may employ the lodestar or percentage-of-recovery method to determine the reasonableness of the requested fee award. *See In re Bluetooth*, 654 F.3d at 942.

Here, Defendant agreed to pay $25,000.00 in attorneys' fees as part of the Settlement. In determining whether an attorneys' fee award is reasonable, courts have requested that the fees be supported by contemporaneous time records setting forth the time expended on the case and hourly rates charged. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012). As such, Plaintiff's counsel have included time records and fees charged, totaling $32,976.25—a figure that exceeds the requested attorneys' fees. (Ex. 1 to Cunningham Decl.; Ex. 1 to Aitchison Decl.) Further, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth*, 654 F.3d at 942. Here, the amount of attorneys' fees represents 17.24% of the Settlement payment—much lower than the typical

25% "benchmark." Thus, the Court finds the attorneys' fees and costs award to be reasonable.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** the Joint Motion for approval of the FLSA Settlement as amended in the parties' supplemental filing (ECF No. 25; ECF No. 27). The Court further **APPROVES** the payment of $25,000 in attorneys' fees. The Court **DISMISSES WITH PREJUDICE** this action and directs the Clerk of Court to close the case.

**IT IS SO ORDERED.**

**DATED: March 7, 2023**

Hon. Cynthia Bashant
United States District Judge